**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | |
|---|---|
| FLEET CONNECT SOLUTIONS LLC,<br>Plaintiff,<br>V.<br>SAFE FLEET ACQUISITION CORP.,<br>SAFE FLEET HOLDINGS LLC,<br>Defendants. | Civil Action No. 4:26-cv-00825<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Fleet Connect Solutions LLC ("Fleet Connect" or "Plaintiff") files this complaint against Safe Fleet Acquisition Corp. and Safe Fleet Holdings LLC (collectively, "Safe Fleet" or "Defendants") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. This is a patent infringement action to stop Defendants' infringement of the following United States Patents (collectively, the "Asserted Patents"):

| | Patent Number | Title | Available At |
|---|---|---|---|
| 1 | 7,742,388 | Packet Generation Systems and Methods | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7742388 |
| 2 | 7,260,153 | Multi Input Multi Output Wireless Communication Method and Apparatus Providing Extended Range and Extended Rate Across Imperfectly Estimated Channels | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7260153 |
| 3 | 7,206,837 | Intelligent Trip Status Notification | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7206837 |
| 4 | 7,741,968 | System and Method for Navigation Tracking of Individuals in a Group | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7741968 |

2. Plaintiff seeks monetary damages.

## PARTIES

3. Plaintiff is a limited liability company formed under the laws of Texas with its registered office address located in Austin, Texas.

4. Based on public information, Defendant Safe Fleet Acquisition Corp. is a corporation organized under the laws of the State of Delaware with its principal place of business located at 6800 East 163rd Street, Belton, Missouri 64012.

5. Based on public information, Defendant Safe Fleet Holdings LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business located at 6800 East 163rd Street, Belton, Missouri 64012.

6. Based on public information, Defendants may each be served through their registered agent for service of process, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington DE 19801, or at their principal place of business at 6800 East 163rd Street, Belton, Missouri 64012.

## JURISDICTION AND VENUE

7. Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

8. This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–85, among others. This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

9. Venue is proper against Defendants in this District pursuant to 28 U.S.C. § 1400(b) and § 1391(c) because each Defendant has maintained a physical location with an established and regular place of business in this District and has committed acts of patent infringement in the District from that regular and established place of business. *See In re: Cray Inc.*, 871 F.3d 1355, 1362-1363 (Fed. Cir. 2017).

10. Defendants' physical location with a regular and established place of business in this District is 6800 East 163rd Street, Belton, Missouri 64012, in Cass County. That address is the principal place of business each Defendant reports for itself in its own federal filings, including Safe Fleet Holdings LLC's filings with the Securities and Exchange Commission and Safe Fleet Acquisition Corp.'s registration of the SAFE FLEET mark with the United States Patent and Trademark Office. Clarience Technologies, LLC identifies that address as "Safe Fleet Headquarters." Safe Fleet Holdings LLC has accepted service of process at that address in prior litigation.

11. The Belton facility is a physical place in this District at which Defendants carry on their business, from which Defendants direct their nationwide sales operations, and from which Defendants advertise, offer for sale, and sell the Accused Products.

12. Defendants offer products and services, including through the manufacture, sale, importation, use, and/or testing of Accused Products, and conduct business in this District.

13. Defendants are subject to this Court's specific and general personal jurisdiction under due process due at least to Defendants' substantial business in this judicial district, including: (i) at least a portion of the infringements alleged herein; (ii) regularly transacting, doing, and/or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Missouri and in this District; (iii) having an interest in, using or possessing real property in Missouri and this District; and (iv) having and keeping personal property in Missouri and in this District.

14. Specifically, Defendants intend to do and do business in, have committed acts of infringement in, and continue to commit acts of infringement in this District directly, through intermediaries, by contributing to and through inducement of third parties, and offer their products

or services, including those accused of infringement here, to customers and potential customers located in this state, including in this District.

15. Defendants commit acts of infringement from this District, including, but not limited to, making, importing, selling, offering for sale, using, installing, and/or testing of the Accused Products, and inducement of third parties to use the Accused Products in an infringing manner.

## THE ASSERTED PATENTS AND ACCUSED PRODUCTS

16. Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

17. Based upon public information, Defendants own, operate, advertise, and/or control the website https://www.safefleet.net/ through which they advertise, sell, offer to sell, provide and/or educate customers about their products and services.

18. Defendants make, use, cause to be used, sell, offer for sale, import, provide, supply, and/or distribute one or more fleet management platform, video, and tracking solutions under the brand names and/or trade names "Safe Fleet," "Seon," "FleetMind," "Mobile-Vision," "MobileView," "Durite," "Elkhart Brass," and "FRC," including, but not limited to, the Mobile Data Terminal (MDT) Rugged and Reliable 10" In-Vehicle Tablet, DH4 4-Channel High-Definition DVR, DH4V2 4-Channel, Safe Fleet Duet™ Dual-Lens Camera and DH4C Recorder System, DH6 6-Channel High-Definition DVR, DH8 8-Channel High-Definition DVR, inView 360HD™, Durite 2K Quad HD Body Worn Camera, S-Core, Smart Reach Wireless Bridge/Smart Reach Lite (SNA002-B10), Smart Reach Wireless Receiver Access Point (SNA002-B20), eWON Cosy 131 Router, ELD Tablets (such as FleetLink Vision+ and FleetLink Lite), Fleet Management application/software/website (including Safe Fleet Compass, Safe Fleet Path, FleetLink, Route Management System, AVL/GPS Fleet Tracking, Safety Dashboard & Reporting, FleetLink On-

Board Computing, SmartConnect API, and Live GPS and Fleet Tracking), driver apps (such as WasteApp, OBU1 Driver, fliGO, and SafePUSH), Fleet Video Systems (including School Bus Camera Systems, Transit Video Surveillance Systems, Fleet Video Systems for Commercial Trucks, Waste Fleet Management Camera Systems, Automated Stop-Arm Camera Solutions, Safe Fleet® Duet™ Camera System, Automated Bus Lane Enforcement (ABLE), and Transit Infotainment / Public Display Systems), Fleet Management (including School Bus Tracking and Performance and Waste Collection Software), Wireless Connectivity (including Wireless Connectivity, Wireless Video Downloading, and WiFi Hotspot), and other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions (collectively, the "Accused Products"). See Exhibits A–H (Evidence of Use Regarding Infringement of the Asserted Patents).

19. Defendants, using the Accused Products, perform wireless communications and methods associated with performing and/or implementing wireless communications including, but not limited to, wireless communications and methods pursuant to various protocols and implementations, including, but not limited to, Bluetooth, IEEE 802.11, and LTE protocols and various subsections thereof, including, but not limited to, 802.11b and 802.11n.

20. The wireless communications performed and/or implemented by Defendants using, e.g., the Accused Products, among other things, generate and transmit packets for wireless communications and communicate data via a plurality of wireless transceivers using a plurality of wireless protocols, and encode data pursuant to one or more of those wireless protocols.

21. Defendants, using the Accused Products, perform singular value decomposition of

estimated channel matrices, transmit data over various media, compute time slot channels, generate packets for network transmissions, perform or cause to be performed error estimation in orthogonal frequency division multiplexed ("OFDM") receivers, and various methods of processing OFDM symbols.

22. For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 7,742,388

23. Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

24. The USPTO duly issued U.S. Patent No. 7,742,388 (the "'388 patent") on June 22, 2010, after full and fair examination of Application No. 11/185,665, which was filed on July 20, 2005.

25. Fleet Connect owns all substantial rights, interest, and title in and to the '388 patent, including the sole and exclusive right to prosecute this action and enforce the '388 patent against infringers and to collect damages for all relevant times.

26. Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '388 patent.

27. The claims of the '388 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods of generating packets in a digital communications system.

28. The written description of the '388 patent describes in technical detail each

limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

29. Defendants have directly infringed, and continue to directly infringe, one or more claims of the ’388 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

30. Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the ’388 patent, as detailed in Exhibits A–C (Evidence of Use Regarding Infringement of U.S. Patent No. 7,742,388).

31. Defendants had knowledge of the ’388 patent at least as of the date Defendants were notified of the filing of this action.

32. Since at least the time of receiving the complaint, Defendants have indirectly infringed and continue to indirectly infringe the ’388 patent by inducing others to directly infringe the ’388 patent. Defendants have induced and continue to induce customers and end-users, including, but not limited to, Defendants’ customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the ’388 patent by providing or requiring use of the Accused Products. Defendants have taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the ’388 patent, including, for example, claim 1. See Exhibits A–C.

33. Such steps by Defendants have included, among other things, advising or directing customers, personnel, contractors, or end-users to use the Accused Products in an infringing

manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or instructional and technical support to users. Defendants have been performing these steps, which constitute induced infringement with the knowledge of the ’388 patent and with the knowledge that the induced acts constitute infringement. Defendants have been aware that the normal and customary use of the Accused Products by others would infringe the ’388 patent. Defendants’ inducement is ongoing. See Exhibits A–C.

34. Since at least the time of receiving the complaint, Defendants have indirectly infringed and continue to indirectly infringe by contributing to the infringement of the ’388 patent. Defendants have contributed and continue to contribute to the direct infringement of the ’388 patent by its customers, personnel, and contractors. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the ’388 patent, including, for example, claim 1. The special features constitute a material part of the invention of one or more of the claims of the ’388 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendants’ contributory infringement is ongoing. See Exhibits A–C.

35. Furthermore, on information and belief, Defendants have a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of Fleet Connect’s patent rights.

36. Defendants’ actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendants.

37. Defendants’ infringement of the ’388 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Fleet Connect’s rights under the patent.

38. Fleet Connect has been damaged as a result of the infringing conduct by Defendants alleged above. Thus, Defendants are liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 7,260,153

39. Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

40. The USPTO duly issued U.S. Patent No. 7,260,153 (the "'153 patent") on August 21, 2007, after full and fair examination of Application No. 10/423,447, which was filed on April 28, 2003.

41. Fleet Connect owns all substantial rights, interest, and title in and to the '153 patent, including the sole and exclusive right to prosecute this action and enforce the '153 patent against infringers and to collect damages for all relevant times.

42. Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '153 patent.

43. The claims of the '153 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of voice and data communications systems.

44. The written description of the '153 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from

and improved upon what may have been considered conventional or generic in the art at the time of the invention.

45. Defendants have directly infringed one or more claims of the ’153 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

46. Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the ’153 patent, as detailed in Exhibits D–F (Evidence of Use Regarding Infringement of U.S. Patent No. 7,260,153).

47. Fleet Connect has been damaged as a result of the infringing conduct by Defendants alleged above. Thus, Defendants are liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 7,206,837

48. Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

49. The USPTO duly issued U.S. Patent No. 7,206,837 (the "’837 patent") on April 17, 2007, after full and fair examination of Application No. 10/287,151, which was filed on November 4, 2002.

50. Fleet Connect owns all substantial rights, interest, and title in and to the ’837 patent, including the sole and exclusive right to prosecute this action and enforce the ’837 patent against infringers and to collect damages for all relevant times.

51. Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one

or more claims of the ’837 patent.

52. The claims of the ’837 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of voice and data communications systems.

53. The written description of the ’837 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

54. Defendants have directly infringed one or more claims of the ’837 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

55. Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the ’837 patent, as detailed in Exhibit G (Evidence of Use Regarding Infringement of U.S. Patent No. 7,206,837).

56. Fleet Connect has been damaged as a result of the infringing conduct by Defendants alleged above. Thus, Defendants are liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 7,741,968

57. Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

58. The USPTO duly issued U.S. Patent No. 7,741,968 (the "'968 patent") on June 22, 2010, after full and fair examination of Application No. 12/143,707, which was filed on June 20, 2008.

59. Fleet Connect owns all substantial rights, interest, and title in and to the '968 patent, including the sole and exclusive right to prosecute this action and enforce the '968 patent against infringers and to collect damages for all relevant times.

60. Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '968 patent.

61. The claims of the '968 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of systems and methods for permissive navigational tracking where the sending party selectively transmits navigation data to a receiving party over a period of time.

62. The written description of the '968 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

63. Defendants have directly infringed, and continue to directly infringe, one or more claims of the '968 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

64. Defendants have directly infringed, either literally or under the doctrine of

equivalents, at least claim 4 of the ’968 patent, as detailed in Exhibit H (Evidence of Use Regarding Infringement of U.S. Patent No. 7,741,968).

65. Defendants had knowledge of the ’968 patent at least as of the date Defendants were notified of the filing of this action.

66. Since at least the time of receiving the complaint, Defendants have indirectly infringed and continue to indirectly infringe the ’968 patent by inducing others to directly infringe the ’968 patent. Defendants have induced and continue to induce customers and end-users, including, but not limited to, Defendants’ customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the ’968 patent by providing or requiring use of the Accused Products. Defendants have taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the ’968 patent, including, for example, claim 4. See Exhibit H.

67. Such steps by Defendants have included, among other things, advising or directing customers, personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or instructional and technical support to users. Defendants have been performing these steps, which constitute induced infringement with the knowledge of the ’968 patent and with the knowledge that the induced acts constitute infringement. Defendants have been aware that the normal and customary use of the Accused Products by others would infringe the ’968 patent. Defendants’ inducement is ongoing. See Exhibit H.

68. Since at least the time of receiving the complaint, Defendants have indirectly

infringed and continue to indirectly infringe by contributing to the infringement of the ’968 patent. Defendants have contributed and continue to contribute to the direct infringement of the ’968 patent by its customers, personnel, and contractors. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the ’968 patent, including, for example, claim 4. The special features constitute a material part of the invention of one or more of the claims of the ’968 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendants’ contributory infringement is ongoing. See Exhibit H.

69. Furthermore, on information and belief, Defendants have a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of Fleet Connect’s patent rights.

70. Defendants’ actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendants.

71. Defendants’ infringement of the ’968 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Fleet Connect’s rights under the patent.

72. Fleet Connect has been damaged as a result of the infringing conduct by Defendants alleged above. Thus, Defendants are liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## DEMAND FOR JURY TRIAL

73. Fleet Connect hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

74. WHEREFORE, Fleet Connect requests that the Court find in its favor and against Defendants, and that the Court grant Fleet Connect the following relief:

a. Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendants or others acting in concert therewith;

b. Judgment that Defendants account for and pay to Fleet Connect all damages to and costs incurred by Fleet Connect because of Defendants' infringing activities and other conduct complained of herein;

c. Judgment that Defendants' infringement of the '388 patent and the '968 patent be found willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

d. Pre-judgment interest on the damages caused by Defendants' infringing activities and other conduct complained of herein;

e. That this Court declare this an exceptional case and award Fleet Connect its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

f. All other and further relief as the Court may deem just and proper under the circumstances.

Dated: September 28, 2026

Respectfully submitted,

*By:/s/ Arthur K. Shaffer*

Arthur K. Shaffer, #51229
McDOWELL, RICE, SMITH & BUCHANAN, P.C.
605 W. 47th Street, Suite 350
Kansas City, MO 64112
Tel.: (816) 960-7396 Fax: (816) 753-9996
ashaffer@mcdowellrice.com

and

James F. McDonough, III (GA 117088) *
Jonathan R. Miller (GA 507179) *
Rozier Hardt McDonough PLLC
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866, -1863
Email: jim@rhmtrial.com
Email: miller@rhmtrial.com

Jonathan L. Hardt (TX 24039906) *
Sujeeth Rajavolu (TX 24127961) *
Rozier Hardt McDonough PLLC
712 W. 14th Street, Suite A
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@rhmtrial.com
Email: sujeeth@rhmtrial.com

*Pro hac vice application to be filed

***Attorneys for FLEET CONNECT SOLUTIONS LLC***